UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

NANCY KERSTEN,                    )
                                  )
            Plaintiff,            )
                                  )
v.                                )        No.:   3:12-CV-584-TAV-HBG
                                  )
LOUDON COUNTY                     )
BOARD OF EDUCATION,               )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendant's Motion for Summary Judgment [Doc. 29] as to plaintiff's sole claim that defendant, her former employer, violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, when it failed to renew her teaching contract [Doc. 1]. Plaintiff has responded [Doc. 34], and defendant has replied [Doc. 38].

Defendant argues that it is entitled to judgment as a matter of law, pursuant to Rule 56 of the Federal Rules of Civil Procedure, because plaintiff has failed to establish a *prima facie* case of discrimination [Doc. 30]. Defendant further argues that even assuming plaintiff has established a *prima facie* case, defendant has articulated a legitimate, nondiscriminatory reason for its failure to renew plaintiff's teaching contract, which plaintiff has not shown to be a pretext. Plaintiff responds that she has established a *prima facie* case, and defendant's reason for its failure to renew her contract is a pretext for discrimination [Doc. 34]. Plaintiff also states in her response to the motion that she is

entitled to summary judgment, but she has not filed a motion for summary judgment. For the reasons set forth below, the Court finds that genuine issues of material fact exist that preclude summary judgment for both parties. Accordingly, defendant's motion for summary judgment will be denied.

## I. Facts

Plaintiff Nancy Kersten was born in 1954 [Doc. 37 p. 4]. She began her teaching career in 1976 as a third-grade teacher in New Orleans. In 2001, plaintiff began teaching in the State of Tennessee as a third-grade teacher in Monroe County [Doc. 37 p. 4]. She subsequently obtained tenure there [Doc. 37 p. 4]. Around July 2008, plaintiff applied for a teaching position at Eaton Elementary School in Loudon County in order to work closer to home [Doc. 31 p. 1; Doc. 34-2 p. 9–10].

Eaton Elementary School principal, Jennifer Malone, and assistant principal, Melanie Amburn, participated in plaintiff's initial interview in July 2008 [Doc. 31 p. 1]. Both Principal Malone and Assistant Principal Amburn were over the age of forty at the time [Doc. 31 p. 1]. In the interview process, Principal Malone explained that the open position was an interim fourth-grade teaching position created by another teacher's maternity leave [Doc. 31 p. 2; Doc. 31-1 p. 9]. Principal Malone made a recommendation to the Director of Schools, Wayne Honeycutt, that defendant hire plaintiff as an interim fourth-grade teacher at Eaton, and Director Honeycutt made the formal decision to hire plaintiff [Doc. 31 p. 1–2]. At the time he made the decision to hire plaintiff, Director Honeycutt was over the age of forty [Doc. 31 p. 4]. Plaintiff

2

worked as an interim fourth-grade teacher at Eaton for the 2008–2009 school year on a one-year contract that was subject to renewal at the end of the year [Doc. 31 p. 2].

Because of the interim nature of plaintiff's position, her contract initially was not renewed for the 2009–2010 school year [Doc. 31 p. 2]. Nevertheless, a third-grade teaching position subsequently became available at Eaton, which defendant offered to plaintiff and plaintiff accepted [Doc. 31 p. 2]. During the 2009–2010 school year, Plaintiff worked as one of eight teachers on the third-grade teaching team at Eaton [Doc. 31 p. 2]. She was the only non-tenured teacher on the third-grade team [Doc. 31 p. 3].

Around March 31, 2010, Principal Malone met with plaintiff to inform her that Principal Malone would be recommending against the renewal of plaintiff's contract for the 2010–2011 school year [Doc. 31 p. 3]. Principal Malone told plaintiff that plaintiff's contract was not being renewed due to the reduction of one third-grade teaching position at Eaton for the upcoming school year, and because plaintiff was the last third-grade teacher hired into her position [Doc. 31 p. 3].[1] Principal Malone also asked whether plaintiff would be interested in a second-grade teaching position should one become available, and plaintiff said she would be interested in it [Doc. 31-1 p. 11]. Plaintiff understood Principal Malone to be asking because there had been rumors that one of the second-grade teachers would be leaving [Doc 31-1 p. 11].

---

[1] The parties disagree about whether it was in fact necessary to reduce the total number of third-grade teachers at Eaton from eight to seven for the 2010–2011 school year. Defendant states that a reduction of one teacher on the third-grade team was necessary because the projected number of third-grade students for the 2010–2011 school year was less than the 2009–2010 school year [Doc. 31 p. 3].

3

Principal Malone recommended against renewing plaintiff's contract, and Director Honeycutt made the decision not to renew it [Doc. 31 p. 3–4]. At the time, he was not aware of plaintiff's age [Doc. 31 p. 4]. Around April 14, 2010, Plaintiff received a letter from defendant stating that her contract would not be renewed for the following school year [Doc. 31-1 p. 10; Doc. 34-4 p. 10]. At no point in her employment did plaintiff hear Principal Malone or Director Honeycutt make comments about her age [Doc. 31 p. 3–4].

On April 20, 2010, Principal Malone wrote a letter of recommendation for plaintiff [Doc. 34-4 p. 9; Doc. 37 p. 5]. In the letter, Principal Malone stated, among other things: "I am writing to highly recommend Nancy Kersten for a teaching position in your school system . . . . She is of stellar character, dependable, and works well with students, parents, and colleagues . . . . She is well-versed in instructional practices, very intelligent, and she consistently plans and implements lessons with student learning in mind . . . . She works hard to establish positive relationships between school and home, and she has excellent classroom management strategies." [Doc. 34-4 p. 9; Doc. 37 p. 5].

In her deposition on June 20, 2014, Principal Malone confirmed that the statements in the letter of recommendation were truthful from her perspective [Doc. 34-3 p. 9]. At the time plaintiff's contract was not renewed, plaintiff held a valid Tennessee teaching license to teach first through eighth grade and had about twenty-five years of teaching experience [Doc. 34-4 p. 8; Doc. 37 p.4]. Defendant admits that plaintiff was qualified for her employment as a teacher [Doc. 37 p. 4].

4

After the non-renewal of plaintiff's contract, but before the end of the 2009–2010 school year, Assistant Principal Amburn spoke with plaintiff about a teaching position that had become available [Doc. 31 p. 4; Doc. 37 p. 3]. The parties agree that plaintiff turned down the position, but they dispute the nature of the position and plaintiff's reason for turning it down [Doc. 31 p. 4; Doc. 37 p. 3]. Defendant contends that Assistant Principal Amburn told plaintiff it was a first-grade teaching position, and plaintiff told Assistant Principal Amburn that she was not interested because she did not want to teach children that young [Doc. 31 p. 4]. Plaintiff contends that it was a "K-1 split," which would involve teaching part kindergarten and part first grade, and she told Assistant Principal Amburn she was not qualified to teach kindergarten [Doc. 37 p. 3]. In any event, Plaintiff's last day of employment was May 27, 2010 [Doc. 34-4 p. 41].

On June 7 through 11, 2010, Principal Malone participated in interviews of approximately twenty-seven people for teaching positions at Eaton [Doc. 34-3 p. 28–29, 35; Doc. 34-4 p. 40]. Among the people interviewed on June 10 was a man named J. Anderson Harp, Jr. [Doc. 34-3 p. 28–29, 35; Doc. 34-4 p. 40]. Mr. Harp was twenty-seven years old at the time [Doc. 37 p. 4–5]. On the same day as Mr. Harp's interview, Principal Malone signed a "Teacher Recommendation Form" for his hire as a third-grade teacher, effective August 2, 2010 [Doc. 34-3 p. 27–28; Doc. 34-4 p. 39]. The field for "Teacher Being Replaced" lists plaintiff's name [Doc. 34-4 p. 39]. Director Honeycutt's signature appears on the form as the approver, dated June 16, 2010 [Doc. 34-4 p. 39]. The form notes that Mr. Harp's "Tennessee Teacher License Number" is "Pending"

5

[Doc. 34-4 p. 39]. Mr. Harp was in fact hired to teach at Eaton for the 2010–2011 school year [Doc. 34-3 p. 26–28].

In August 2010, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in Nashville alleging that defendant had discriminated against her on the basis of age and gender [Doc. 1-1 p. 1]. Defendant responded in December 2010, with supplemental responses in February 2012 [Doc. 34-4 p. 12–38].

In its original explanation for its action, defendant's statements to the EEOC included: (1) "The Charging Party states that she met with the principal of the school who told that the fourth grade team was being reduced from seven teachers to six. In fact, that reduction did occur at the school;" (2) "It is also asserted by the administration of the school at which Charging Party was employed that she lacked a positive attitude and that she did not work well with the fourth grade team to which she was assigned;" and (3) "Respondent states that it has a duty to provide the best teachers to its students whom it can employ and made a determination, pursuant to statute, that this teacher's contract should not be renewed" [Doc 34-4 p. 23–26].

Defendant's original explanation to the EEOC also gave three specific examples of plaintiff's alleged poor conduct: (1) "Charging Party was called onto [sic] a conference with the principal and parent . . . . the Charging Party stated (to the parent) that '. . . your child would have to be retarded not to understand the proper way to turn in his assignments;'" (2) "[E]ach faculty member was requested by the school administration to

6

attend an after-hours series of events called March Madness. Charging party complained the [sic] school administration regarding this request and proceeded to call the state teacher association . . . .;" and (3) "[P]arent complaints regarding Charging Party and her classroom management were numerous and involved a lot of time for the school" [Doc. 34-4 p. 25]. In her June 2014 deposition, Principal Malone stated that the first two alleged examples of plaintiff's misconduct (calling a student "retarded" and complaining about the "March Madness" events) were not accurate [Doc. 34-3 p. 25–26].

In other parts of its original EEOC response, defendant was asked about the teaching position in question during the relevant time period. Defendant responded in part: "Total number of applications received for the vacant position formerly occupied by the Charging Party was 30" [Doc. 34-4 p. 29]. In response to a question about who filled the position in question, defendant responded, "J. Anderson Park, Jr." [Doc. 34-4 p. 30]. In response to a question about whether it had considered plaintiff for the position, defendant stated: "The Charging Party's name was mentioned by the principal of the school as a possibility for the position. However, since the Charging Party had not submitted any formal application or a resume, neither had she expressed any interest whatsoever in a position at Eaton School, the leadership team chose not to consider her name for any position that became vacant" [Doc. 34-4 p. 30]. In her June 2014 deposition, Principal Malone explained that this statement to the EEOC was incorrect insofar as she did not mention plaintiff as "a possibility for *the* position," but rather as "a possibility for *a* position" [Doc. 34-3 p. 18–22 (emphasis added)].

7

In its February 2012 supplemental filings with the EEOC, defendant was asked to provide the birth date of Mr. Harp. Defendant responded: "The employment of J. Anderson Harp, Jr. has no bearing upon this matter. The charging party seems to be of the opinion that Mr. Harp took her place. In fact, that is not the case. Mr. Harp was instead hired to replace a tenured teacher. Without waiving this objection, the date of birth for Mr. Harp is 07/03/1982." [Doc. 34-4 p. 37]. In her June 2014 deposition, Principal Malone elaborated that a third-grade teaching position became vacant after a second-grade teacher announced her retirement in June 2010, and a tenured third-grade teacher transitioned to teach second grade, thereby creating an opening in the third grade [Doc. 34-3 p. 34–35].

The EEOC found reasonable cause to believe that defendant had discriminated against plaintiff, and the EEOC provided plaintiff with a Notice of Right to Sue on August 15, 2012 [Doc. 1-1 p. 5]. This action followed on November 8, 2012 [Doc. 1].

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if a reasonable trier of fact could find in favor of the non-moving party. *Id.* The moving party bears the burden of establishing that no genuine issue of material fact

8

exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Accordingly, all facts and all inferences to be drawn from them must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). Likewise, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (internal quotations omitted).

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 250. Thus, the Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. The Court also does not search the record "to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479–80. In short, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any

genuine factual issues that properly can be resolved only by a trier of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

Plaintiff has brought an age-based discrimination claim against defendant under the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. §§ 621, *et seq.* The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "The purpose of the ADEA . . . is to protect older workers from being 'deprived of employment on the basis of inaccurate and stigmatizing stereotypes,' and to ensure that employers evaluate their employees on the basis of their merits, and not their age." *Allen v. Diebold*, 33 F.3d 674, 676–77 (6th Cir. 1994) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

"[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). There are two ways that a plaintiff can prove an ADEA violation: by direct evidence or by circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009). Here, plaintiff contends that her claim is based on circumstantial evidence. Accordingly, the Court is guided by the familiar tripartite framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Geiger*, 579 F.3d at 622.

10

On a motion for summary judgment, the *McDonnell Douglas* tripartite framework first provides that plaintiff must submit evidence from which a reasonable jury could conclude that a *prima facie* case of discrimination has been established. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (citing *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007)). If submitted, the burden of production shifts to defendant to offer sufficient evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If defendant does so, the burden shifts back to plaintiff, who must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id.*

Although the burden of production shifts between plaintiff and defendant, the burden of persuasion always rests with plaintiff, viewing the evidence in the light most favorable to her. *Provenzano*, 663 F.3d at 812.

## A. *Prima Facie* Case of Discrimination

To set forth a *prima facie* case of age discrimination using circumstantial evidence, a plaintiff usually must establish that:

> (1) he or she was a member of a protected age class (i.e., at least forty years old); (2) he or she suffered an adverse employment action; (3) he or she was qualified for the job or promotion; and (4) the employer gave the job to a younger employee.

*Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014). This burden "is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Indeed, it is "easily met." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (quoting *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)).

In this case, defendant argues only that plaintiff has not met the fourth prong of the *prima facie* case test. Defendant argues that plaintiff must meet a modified and heightened standard, because the non-renewal of plaintiff's contract resulted from a reduction in force, namely, the elimination of one of the eight third-grade teaching positions at Eaton for the 2010–2011 school year [Doc 30 p. 3].[2] "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Accordingly, a case is not a reduction in force case when an employee has been "replaced after his or her discharge." *Id.* Replacement occurs when "another employee is hired or reassigned to perform the plaintiff's duties." *Id.* An employee is not replaced merely "when another employee is assigned to perform the plaintiff's duties in addition to other duties, or the work is redistributed among other existing employees already performing related work." *Id.*

Here, plaintiff has presented sufficient evidence to create a genuine dispute regarding whether her position was truly eliminated; therefore, she does not need to meet the heightened standard to prove her *prima facie* case. *Pierson*, 749 F.3d at 539. Defendant asserts that plaintiff acknowledges there was in fact a reduction of third-grade teachers for the 2010–2011 school year, and defendant submits that Mr. Harp was placed into a third-grade teaching position after a second-grade teacher announced her

_____

[2] To prove a *prima facie* case of discrimination in a reduction in force case, a plaintiff must satisfy the first three prongs of the *McDonnell Douglas* test and then meet a heightened standard by presenting "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [her] out . . . for discharge for impermissible reasons." *Pierson*, 749 F.3d at 536–37 (ellipses in original) (quoting *Barnes*, 896 F.2d at 1465).

12

retirement and a tenured third-grade teacher transitioned to teach second grade. Thus, defendant argues, if Mr. Harp replaced anyone, it would have been the second-grade teacher who retired.

Defendant's arguments are not dispositive. Plaintiff has not conceded in her filings with the Court that there was a reduction in third-grade teachers. Her acknowledgement that there was a reduction in third-grade teachers came in response to defense counsel's questions in her deposition [Doc. 31-1 p. 15–19]. Based on the context of the questions, a reasonable trier of fact could take her testimony to be that she was told by defendant there was a reduction in third-grade teachers, not that she had personal knowledge of such a reduction. Indeed, plaintiff also said that she was led to believe she had been discriminated against because defendant later hired Mr. Harp to teach third grade [Doc. 31-1 p. 17].

Less than two months after plaintiff received formal notice that her contract was not being renewed, and only two weeks after the end of plaintiff's employment, defendant interviewed dozens of candidates for teaching positions at Eaton. Defendant represented to the EEOC that it received thirty applications for "the vacant position formerly occupied by [plaintiff]." Principal Malone recommended that defendant hire Mr. Harp on the same day as his interview, and the form that she signed noted both that plaintiff was the "teacher being replaced" and that Mr. Harp would teach third grade. Principal Malone later explained: "We had to put a teacher's name that was no longer

13

there to hire a new teacher. It didn't really have relevance. It just had to be *a person substituting for another*" [Doc 34-3 p. 28 (emphasis added)].

Additionally, defendant's claim that the rising third-grade class for the 2010–2011 school year was smaller in number than the previous class—thus necessitating the asserted reduction in third-grade teachers—is supported only by the statements of Assistant Principal Amburn and Principal Malone [Doc. 34-3 p. 34; Doc. 34-5 p. 4–6]. Yet Assistant Principal Amburn conceded in her deposition that the projected reduction in third grade students had no basis in any written document, and she could neither specifically recall the number of rising third-grade students versus existing third-grade students nor point to a document that would contain those numbers [Doc. 34-5 p. 4–6]. It is notable that the factual basis underlying defendant's asserted need to reduce the number of third-grade teachers turns on the credibility of Assistant Principal Amburn and Principal Malone, and there is documentary evidence that, viewed in the light most favorable to plaintiff, calls their statements into question. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 724 (6th Cir. 2004) (credibility assessments are the province of the trier of fact). On this evidence, a reasonable trier of fact could find not only that plaintiff's position was not truly eliminated, but that plaintiff was in fact replaced by Mr. Harp in satisfaction of the traditional fourth prong of the *prima facie* case test.

With respect to defendant's argument that plaintiff was not replaced by Mr. Harp because a second-grade teacher retired and a third-grade teacher transitioned to teach second grade, a reasonable trier of fact could simultaneously find that there was indeed

14

one fewer third-grade teacher for the 2010–2011 school year, but that plaintiff's position was not eliminated. Plaintiff was licensed to teach first through eighth grade. There are a number of instances in which teachers at Eaton moved to teach different grades. For example, defendant has stated that a tenured third-grade teacher was permitted to move to the second grade. After plaintiff's interim-fourth grade position was not renewed, she was offered a third-grade position. Principal Malone testified in her deposition that the new teachers defendant interviewed and hired in the summer of 2010 were considered to have non-grade specific positions at Eaton for the 2010–2011 school year [Doc. 34-3 p. 26, 36]. Therefore, a reasonable trier of fact could find that plaintiff's position is better described as a non-grade-specific teacher at Eaton rather than that of a third-grade teacher, and view the document listing plaintiff as the "teacher being replaced" by Mr. Harp as accurately describing what took place.

Accordingly, for purposes of summary judgment review, plaintiff has established a *prima facie* case of discrimination.

### B.     Legitimate Reason for Defendant's Action

The burden now shifts to defendant to articulate a legitimate nondiscriminatory reason for its action. A defendant is not required to show that it was actually motivated by this nondiscriminatory reason; it simply must raise a genuine issue of fact as to whether it discriminated against plaintiff. *Provenzano*, 663 F.3d at 814–15 (6th Cir. 2011) (citing *Burdine*, 450 U.S. at 254). Because a defendant's burden is only one of

production, the Court does not assess the credibility of a defendant's proffered reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

Defendant has met its burden here. Defendant explains in its motion papers that it did not renew plaintiff's contract because it was necessary to reduce the number of third-grade teachers by one for the 2010–2011 school year. In its Statement of Material Facts, defendant elaborates that the reduction of one third-grade teacher was necessary because the rising third-grade class for the 2010–2011 school year was smaller in number than the third-grade class for 2009–2010, and plaintiff was the only third-grade teacher without tenure [Doc. 31 p. 3]. Defendant supports its explanation with evidence and testimony from Principal Malone, Vice Principal Amburn, Director Honeycutt, and plaintiff herself.

If defendant's explanation is true, defendant's action would not constitute discrimination on the basis of age. Therefore, for purposes of summary judgment review, defendant has satisfied its burden to produce a legitimate reason for its action.

### C.     Proof that Defendant's Reason is a Pretext

The burden now shifts back to plaintiff. In this final stage of the analysis, a plaintiff must "demonstrate that the employer's proffered nondiscriminatory reason was not the true reason for the employment decision, but rather a pretext for discrimination." *Provenzano*, 663 F.3d at 815 (quoting *Burdine*, 450 U.S. at 256. The burden to demonstrate pretext "merges with [plaintiff's] ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 812 (quoting *Burdine*, 450 U.S. at 256). "[A] reason cannot be proved to be a pretext *for discrimination* unless

16

it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515 (internal quotations omitted).

In appropriate circumstances, a reasonable trier of fact may make the ultimate inference of discrimination based upon nothing more than a showing that a defendant's proffered reason is unworthy of credence combined with the facts of the *prima facie* case. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–149 (2000); *St. Mary's Honor Ctr.*, 509 U.S. at 511. Accordingly, a plaintiff can provide sufficient evidence of a pretext for unlawful discrimination "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). As previously discussed, a reasonable trier of fact could disbelieve that there was actually a reduction in force at Eaton, or find that if such a reduction did occur, the reduction of one third-grade teacher was insufficient to warrant defendant's conduct toward plaintiff.

Additionally, a trier of fact may conclude that a defendant's reason is both false and a pretext for unlawful discrimination if the defendant has provided shifting justifications for its action. *Pierson*, 749 F.3d at 540–41 (citing *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002)). Such an inference of discriminatory intent is permissible when a plaintiff shows that a defendant's justification for its action has changed over time. *Id.* at 540. Nevertheless, a defendant does not shift justifications

17

merely by providing additional reasons for its action when it has consistently emphasized the same primary reason over the course of litigation. *See Alexander v. Ohio State Univ. Coll. of Soc. Work*, 429 F. App'x 481, 489–490 (6th Cir. 2011). Here, plaintiff has identified sufficient evidence for a reasonable trier of fact to conclude that defendant shifted its justifications.

In its December 2010 response to the EEOC, defendant explained its action by stating, "the fourth grade team was being reduced from seven teachers to six," and that "[plaintiff] lacked a positive attitude and that she did not work well with the fourth grade team to which she was assigned." Defendant further cited examples of plaintiff's alleged misconduct, including that plaintiff had called a student "retarded," complained about participating in an after-hours series of events called "March Madness," and failed to address parent complaints about her classroom management.

Defendant argues that it did not shift its justifications in this case because it is undisputed that defendant told plaintiff her contract was not being renewed due to an upcoming reduction in the number of third-grade teachers from eight to seven. There is no dispute that defendant gave this explanation to plaintiff on March 31, 2010. Nevertheless, defendant's responses to the EEOC, covering December 2010 to February 2012, failed to set forth this reason. Defendant suggests that it "erroneously referred to a reduction in fourth grade teaching positions instead of third grade teaching positions." [Doc. 38 p. 3]. Such an explanation may be one way to view the evidence, but it is not the only way. A reasonable trier of fact could instead credit defendant's response to the

18

EEOC regarding a reduction in fourth-grade teachers and find it insufficient to explain defendant's action. Alternatively, a reasonable trier of fact could conclude that defendant has offered fundamentally different justifications at various points in the litigation.

Indeed, there is sufficient evidence to support a finding that a number of the reasons defendant gave to the EEOC for its action are pretextual. Principal Malone testified in her June 2014 deposition that plaintiff did not in fact call a student "retarded" or complain about participating in the "March Madness" series of events. Principal Malone's April 20, 2010, letter of recommendation could reasonably be viewed as rebutting the assertion that plaintiff had poor classroom management skills. Because there is no evidence that defendant attempted to amend its answers from December 2010 to February 2012, a reasonable trier of fact could conclude that defendant persisted in setting forth pretextual reasons during significant portions of the litigation. All of this evidence, viewed in the light most favorable to plaintiff, could support a conclusion that defendant's present justification is a pretext for discrimination.

A trier of fact may also infer discriminatory intent if an employee was significantly more qualified than the person who replaced him or her. *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 625–628 (6th Cir. 2006). An employee is significantly more qualified than another when two reasonable decision-makers considering the employees' qualifications could not arrive at opposition conclusions about who is more qualified. *Bender*, 455 F.3d at 628. When a plaintiff has provided other probative evidence of discrimination, a disparity in qualifications can support an

inference of discrimination even if the disparity is less significant. *See id.* at 626–27 (citing *Jenkins v. Nashville Pub. Radio*, 106 F. App'x 991, 995 (6th Cir. 2004)).

Defendant argues that the case law regarding the superior-qualifications inference is inapplicable here because this case is a reduction in force case and Mr. Harp was not a co-worker of plaintiff. Instead, defendant argues, the proper comparison would be between plaintiff and the other third-grade teachers for the 2009–2010 school year (all of whom had tenure). The superior-qualifications inference is not limited to co-workers, however. For example, it can be drawn in failure to hire cases. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393–394 (6th Cir. 2008). Accordingly, if a trier of fact found that Mr. Harp replaced plaintiff, it would be proper to compare Mr. Harp's qualifications with plaintiff's.

Here, there is no evidence that Mr. Harp had any teaching experience. The form Principal Malone signed in recommending his hire lists his teaching license number as "pending." In contrast, plaintiff had about twenty-five years of teaching experience in 2010 and was licensed to be a teacher in Tennessee. When Principal Malone was asked in her deposition about how Mr. Harp's qualifications compared with plaintiff's, Principal Malone stated only: "They are different people. They have different personalities, different ways of doing things. In particular, Mr. Harp had a very strong set of technology skills" [Doc. 34-3 p. 32]. Principal Malone noted that technology skills were an area that plaintiff "would want to improve on, not that she didn't have any" [Doc. 34-3 p. 32]. In contrast, a reasonable trier of fact could adopt as true Principal

Malone's statements about plaintiff in her letter of recommendation, finding that plaintiff "is of stellar character, dependable, and works well with students, parents, and colleagues . . . . is well-versed in instructional practices, very intelligent, and she consistently plans and implements lessons with student learning in mind . . . ." Taking the evidence in the light most favorable to plaintiff, two reasonable decision-makers could not disagree that plaintiff was the more qualified employee, and a reasonable trier of fact would be permitted to infer discriminatory intent on the part of defendant.

Plaintiff has presented sufficient evidence from which a reasonable trier of fact could find defendant's explanation unworthy of credence and infer discriminatory intent. Accordingly, for purposes of summary judgment review, plaintiff has established that defendant's explanation is a pretext for discrimination.

### D.     Inferences that would Favor Defendant

Defendant urges the Court to consider the same-actor inference in ruling on its motion for summary judgment. The same-actor inference permits a trier of fact "to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Wexler*, 317 F.3d at 572 (quoting *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995)). It could be drawn here because Principal Malone and Director Honeycutt made the decision to hire plaintiff in 2008 and also not to renew her contract two years later in 2010. *See Buhrmaster*, 61 F.3d at 463 (citing *Lowe v. J.B. Hung Transp., Inc.*, 963 F.2d 173, 175 (8th Cir. 1992)).

Defendant, however, has failed to address the Sixth Circuit's holding in *Wexler* that the same-actor inference "is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact." 317 F.3d at 573–74. As discussed above, plaintiff has raised genuine issues of material fact as to whether defendant discriminated against her on the basis of age. Although a reasonable trier of fact would be permitted to draw the same-actor and inference when determining the ultimate issue of discriminatory intent in this case, the inference is not mandatory. *Wexler* precludes the Court from invoking it to grant defendant's motion.

## IV. Conclusion

For these reasons, plaintiff has set forth circumstantial evidence which, taken collectively and in the light most favorable to her, creates genuine issues of material fact as to whether defendant discriminated against her in violation of the ADEA. Accordingly, defendant's Motion for Summary Judgment [Doc. 29] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE